UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

QUINTON REECE LANE MARTIN                                                   PLAINTIFF
ADC #161005

V.                              No. 3:22-CV-51-DPM-JTR

JACOB REDMAN,
Officer, Jackson County Detention Center                                   DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

On March 1, 2022, Plaintiff Quinton Reece Lane Martin ("Martin"), then a pretrial detainee in the Jackson County Detention Center ("JCDC"), filed a *pro se* § 1983 Complaint alleging Defendant Officer Jacob Redman ("Officer Redman") violated his constitutional rights. Specifically, Martin alleges that, on January 25,

2022, Officer Redman offered his "whole paycheck" to any inmate that jumped "from the top to the bottom" of the JCDC stairs. *Doc. 1 at 8*. Martin—taking Officer Redman at his word—raced to the top of the stairs and jumped. *Id.* Martin broke his leg and was taken to the emergency room. *Id. at 8, 10*. He returned to JCDC that evening with a cast and crutches. *Id. at 10*.

Martin submitted his Complaint on the Western District of Arkansas's "Form to be Used by Prisoners In Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983." *See Doc. 1 at 1*. On the section of the form Complaint that is used to indicate whether the plaintiff had exhausted his administrative remedies, Martin wrote that he had *not* filed any grievances at JCDC related to his Complaint because "this is a personal injury case where the grievance process was not included." *Id. at 13*. Martin signed the Complaint under penalty of perjury. *Id. at 9*.

After screening the Complaint, the Court allowed Martin to proceed on a failure-to-protect claim against Officer Redman. *Doc. 15; Doc. 16*.

On November 8, 2022, Officer Redman filed a Motion for Summary Judgment, Statement of Undisputed Facts, and Brief in Support. *Doc. 33; Doc. 34; Doc. 35*. Officer Redman argues that he is entitled to summary judgment because Martin failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *Id.* Attached to Officer Redman's Motion for Summary Judgment is: (1) the Affidavit of JCDC Jail Administrator Curt Cooper

("Administrator Cooper"); (2) the JCDC grievance procedure (*Doc. 33-1 at 4*); and (3) one hundred and one (101) pages of grievances and requests submitted by Martin while he was incarcerated in JCDC (*Doc. 33-1 at 5–105*).

On November 9, 2022, the Court entered an Order explaining Martin's right to file a Response to Officer Redman's Motion for Summary Judgment. *Doc. 36*. The Court directed that any such Response be filed by November 23, 2022. *Id.*

After the Court granted Martin's two initial Motions for Extension of Time, the Response deadline was extended to February 22, 2023. *Doc. 41*. Since February 24, 2023, Martin has filed three additional Motions for Extension of Time and a Motion to Amend Complaint. *Docs. 43–44, 46, 49*. Those Motion remain pending before the Court.

For the reasons explained below, it is recommended that Martin's pending Motions be denied, as futile, and Officer Redman's Motion for Summary Judgment be granted.[1]

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

## II. Discussion

### A.   The PLRA's Mandatory Exhaustion Requirements

The PLRA provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The purposes of the PLRA's exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Porter v. Nussle,* 534 U.S. 516, 524–25 (2002*)* (the exhaustion requirement allows detention officials the time and opportunity to review and address complaints internally before the prisoner is allowed to initiate a federal § 1983 claim). It is well settled law that the PLRA's exhaustion requirement is *mandatory*. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) fully and properly exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones*, 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton*, 752 F.3d 1136,

4

1141–42 (8th Cir. 2014); *Johnson v. Jones*, 340 F.3d 624, 626–28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so properly so that the agency addresses the issues on the merits"). Thus, Martin was required to exhaust all available JCDC administrative remedies *before* he initiated this § 1983 action.

The JCDC provides the following administrative process for inmates to exhaust grievances: (1) to initiate the process, inmates must submit their grievance "via the kiosk in the housing units…describing all facts and information with the dates and times clearly stated;" (2) then, a JCDC employee provides a written response to the inmate within ten working days; (3) finally, the inmate "may appeal any response or lack of response to the Sheriff…through the kiosk." Doc. 33-1 at 4.

### B. Martin Failed to Exhaust His Administrative Remedies *Before* Initiating this § 1983 Action

In his Affidavit, Administrator Cooper attests that: (1) Martin was aware of the JCDC grievance policy and received a copy of it; (2) Martin submitted several requests and grievances through the JCDC kiosks during his incarceration; and (3) none of Martin's grievances or requests "concern the allegations stated in his Complaint." *Doc. 33-1 at 1–2*.

5

Although Martin has not submitted a summary judgment Response, Martin does *not* appear to dispute Administrator Cooper's assertions. Instead, Martin, who is now incarcerated in the Tucker Unit of the Arkansas Division of Corrections,[2] notified the Court that he mailed a grievance to JCDC on February 3, 2023—*after* Officer Redman submitted his Motion for Summary Judgment and *well after* he initiated this § 1983 action on March 2, 2022. *Doc. 42*. He sent a second grievance to JCDC on February 24, 2023. *Doc. 45*; *Doc. 46*.

Martin seeks additional time to file his Response to the Motion for Summary Judgment so he may obtain "witness statements" and "security tape footage" from the incident—evidence related to the *merits* of Martin's case and *not* to the issue of exhaustion currently before the Court. *Doc. 49*. Martin also seeks to amend his Complaint to state that he has now exhausted his administrative remedies.[3] *Doc. 46*.

As previously discussed, the PLRA requires a prisoner to fully exhaust his available administrative remedies *before* initiating a § 1983 action. 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95. In his sworn Complaint and Motion to Amend Complaint, Martin concedes that he did not file a grievance against Officer Redman before he initiated this § 1983 on

---

[2] *See Doc. 8* (returned mail indicating that, as of March 24, 2022, Martin was no longer incarcerated in JCDC); *Doc. 26* (Martin's notice of change of address to the Tucker Unit).

[3] Martin believes he has now exhausted his administrative remedies because he did not receive a written response to his February 2023 grievances within ten working days. *Doc. 46*.

6

March 1, 2022. Instead, he attempted to exhaust his administrative remedies by mailing written grievances to JCDC on February 3 and February 24, 2023. *Doc. 42; Doc. 45*.

The PLRA's exhaustion requirement is mandatory, and Martin's efforts were too little, too late. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (the PLRA's "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account."). There is only one exception to the PLRA's exhaustion requirement: prisoners are only required to exhaust "available" administrative remedies. *Id.*

Based on the vast numbers of request and grievances Martin submitted while incarcerated in JCDC (*see Doc. 33-1 at 5–105*), it is abundantly clear that the grievance procedure was made available to him. Martin's mistaken belief that he did not need to exhaust his administrative remedies, because "this is a personal injury case," did not excuse him from exhausting his administrative remedies and did not render the JCDC's grievance procedure unavailable to him. *See Lyon*, 305 F.3d at 809 (A court cannot "consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'").

Because Martin admits that he did not exhaust his available administrative remedies *before* initiating this action, it would be futile to grant him additional time to file a summary judgment Response and leave to amend his Complaint.

7

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Martin's Motion for Extension of Time (*Doc. 43; Doc. 44; Doc. 49*) and Motion to Amend Complaint (*Doc. 46*) be DENIED, as futile.

2. Defendant Officer Redman's Motion for Summary Judgment (*Doc. 33*) be GRANTED.

3. Martin's claims against Officer Redman be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

4. Judgment be entered accordingly.

5. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal of any Order adopting this Recommendation would not be taken in good faith.

DATED this 30th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE